UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17-cv-00130-FDW

| BONNIE MOORE CULBERTSON, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
| | ) ORDER |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Plaintiff Bonnie Moore Culbertson's Motion for Summary Judgment (Doc. No. 10), filed December 15, 2017, and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Commissioner") Motion for Summary Judgment (Doc. No. 12), filed February 13, 2018. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Social Security Income ("SSI") and Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

I. BACKGROUND

Plaintiff filed an application for Title II benefits on September 16, 2013 (Tr. 229) and Title XVI benefits on September 24, 2013 (Tr. 236). Plaintiff alleges disability beginning June 18, 2018. (Tr. 79). After her application was denied initially and upon reconsideration (Tr. 161, 166, 170), Plaintiff request a hearing (Tr. 175). After a hearing on June 15, 2016 (Tr. 39, 193, 219),

1

the ALJ issued an unfavorable decision (Tr. 18). Plaintiff's subsequent request for review by the Appeals Council was denied. (Tr. 1).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 18, 2008 and met the insured status requirements through September 30, 2015. (Tr. 23). The ALJ found Plaintiff to have the following severe impairments: "status-post June 2008 cerebrovascular accident (stroke); hypertension; neuropathy; anxiety; and depression[.]" (Tr. 24). The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart B, App. 1. (Tr. 25). The ALJ then found Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b):

> [E]xcept she can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; and she can have only occasional exposure to workplace hazards such as unprotected heights and dangerous machinery. Mentally, the claimant is limited to simple, routine, repetitive tasks, with no fast-paced production-rate work. She requires a work environment with few if any, workplace changes, and occasional interaction with the general public.

(Tr. 26). In response to a hypothetical that factored in Plaintiff's age, education, work experience, and RFC, the vocational expert ("VE") testified that Plaintiff could perform her past relevant work as a housekeeper and could perform others jobs that exist in significant numbers in the national economy. (Tr. 31-32). As a result, the ALJ concluded Plaintiff was not disabled, as defined under the Social Security Act, from June 18, 2008 through the date of the ALJ's decision. (Tr. 32).

Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ found Plaintiff capable of performing light work. (Doc. No. 11 at 4).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step

process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,"

> 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

## III. ANALYSIS

The only inquiry on appeal is whether the ALJ's decision that Plaintiff had the RFC to perform light work is supported by substantial evidence. (Doc. No. 11 at 4). Plaintiff contends that the record supports that Plaintiff was unable to lift more than 10 pounds, but that light work is defined as lifting no more than 20 pounds at a time. (Doc. No. 11 at 4). Specifically, Plaintiff cites the Function Report completed by Plaintiff's mother and the consultative examiner's opinion that Plaintiff was limited to lifting 10 pounds occasionally. (Doc. No. 11 at 4-5). Plaintiff also argues light work requires "a good deal of walking," 20 C.F.R. §§ 404.1567, 416.967, which is inconsistent with the consultative examiner's opinion that she uses a one-point cane. (Doc. No.

5

11 at 5). The Commissioner disagrees and summarizes the ALJ's decision and the evidence cited by the ALJ. (Doc. No. 13 at 4-16).

Upon review, this Court cannot re-weigh conflicting evidence or make credibility determinations, Hays, 907 F.2d at 1456, and instead only considers whether "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists, Johnson, 434 F.3d at 653 (citations omitted). The exertional level of light "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). In the Function Report completed by Brenda M. Rucker, Plaintiff's mother, Ms. Rucker indicated Plaintiff's ability to lift and walk were affected and listed "10 lbs" and "to the mailbox" as her respective limitations. (Tr. 290, 297). Dr. J. Staneata, a consultative examiner, opined on Plaintiff's functional assessment that Plaintiff's "maximum standing/walking capacity" was "less than two hours due to low back pain as well as severe muscle spasms" and "maximum lifting/carrying capacity" was "10 pounds occasionally and frequently due to severe muscle spasms as well as low back pain." (Tr. 384). The ALJ considered both Ms. Rucker's and Dr. Staneata's opinions but gave them both little weight. As to Ms. Rucker's statements, the ALJ highlighted that she was a non-medical source with a sympathetic interest in her daughter's welfare. (Tr. 30 (citing 20 C.FR. §§ 404.1513(a), (d), 416.913(a), (d); SSR 06-03p)). As to Dr. Staneata's opinion, and the state consultants, relying on his opinion, the ALJ discounted these opinions because they were "based primarily on [Plaintiff's] subjective complaints in her consultative examination, and are inconsistent with her providers' many normal findings after 2009." (Tr. 29). Specifically, the ALJ found:

> A stroke may unquestionably lead to diminished physical and mental capacity, and the above evidence is consistent with the claimant's allegations and testimony. However, the record as a whole does not contain findings that fully accord with the symptoms and limitations the claimant has described. For example, in contrast to the claimant's allegations of stroke-related uncontrollable jerking and spasms, in examinations conducted in 2009 and 2010, she denied having focal neurological symptoms, incoordination, or weakness (Ex. 2F/11, 16, 19, 21). Examinations conduct at that time were negative for any acute processes. She consistently was fully oriented. Her speech, affect, and cognitive function were normal. Her cranial nerves were normal. Her reflexes, coordination, and gait were normal, and she demonstrated 5/5 strength in all muscle groups . . . .
>
> In short, the objective clinical findings show that the claimant suffered a stroke in 2008, and recovered in 2009 and 2010 to the extent that she had normal musculoskeletal strength and range of motion and no severe neurological deficits. She had very few treatment encounters from 2011 through 2016, and she exhibited extreme deficits in 2014 consultative examinations that were unexplained by any findings by her providers. Viewing the medical evidence as a whole, the record shows that the claimant is at least capable of light work.

(Tr. 27-29).[1] The records relied on by the ALJ provide substantial support for the ALJ's determination. See generally Keffer v. Colvin, 519 F. App'x 151 (4th Cir. 2013) (affirming Commissioner's decision upon review of record showing substantial evidence supported the ALJ's RFC determination). Upon review by this Court, they show 5/5 strength in all muscles; normal reflexes, coordination, and gait; normal cranial nerves; no focal neurological symptoms, incoordination, or weakness (Tr. 343, 352, 357, 360, 362-63), and Plaintiff's representation that she does not have trouble getting around (Tr. 362). Accordingly, Plaintiff has presented no basis

---

[1] The ALJ also highlighted that Dr. Trishwant Garcha diagnosed Plaintiff with "neuropathy due to claimant's complaints of numbness and tingling in her hands (Ex. 3F/4) but did not document any findings suggesting physical incapacity." (Tr. 28, 367). Further, as testified at the hearing by Plaintiff after questioning by the ALJ, Plaintiff did not seek medical treatment from Dr. Garcha from 2014 until her counsel scheduled her an appointment in April 2016 and had little contact with Dr. Garcha in 2012 and 2013. (Tr. 28, 29, 48). See generally 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source."). Plaintiff indicated that she was not going to go to Dr. Garcha before that, and subsequently stated she couldn't afford it. (Tr. 48). On this record, the ALJ stated "[t]he lack of findings and office visits is at odds with the debilitating symptoms the claimant describes." (Tr. 28); SSR 96-7P. Given the lack of contact with Plaintiff and the lack of clinical findings "that accord with the limitations he . . . assessed[,]" the ALJ gave little weight to Dr. Garcha's opinion. (Tr. 29, 431). Plaintiff has not disputed the weight given to Dr. Garcha's opinion.

7

for reversal or remand of the ALJ's determination. The ALJ's determination is supported by substantial evidence.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 12) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: April 26, 2018

Frank D. Whitney
Chief United States District Judge